IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**RODZINSKI WEEKLY**　　　　　　　　　　　　　　　　　　**PLAINTIFFS**

**V.**　　　　　　　　　　　　　　　　　　　　　　　**NO: 3:20CV146-M-P**

**TALLAHATCHIE COUNTY,**　　　　　　　　　　　　　**DEFENDANTS**
**MISSISSIPPI and SHERIFF JIMMY D.**
**FLY, JR., In his Official and Individual**
**Capacities**

### ORDER

This cause comes before the Court on Defendants' motion for summary judgment [44]. The Court, having considered the memoranda and submissions of the parties, along with relevant case law and evidence, is now prepared to rule.

### Factual Background

In August 2018 William Brewer, the Sheriff of Tallahatchie County, was indicted on federal criminal charges. He was replaced with Jimmy Fly, Jr., the defendant in this suit, to serve the remainder of Brewer's term as interim sheriff. In 2019, if Fly wished to remain Sheriff, he would have to run for office and win.

Fly sought to be elected sheriff in 2019 along with three other deputies, John Page, Maurice Brooks, and Rodzinski Weekly. Beyond the four deputies, there was a large pool of candidates- specifically, the democratic primary had 10 candidates which included Fly, Page and Brooks. Ultimately, Fly won the democratic primary. Weekly, the plaintiff, identified as an Independent, and faced Fly in the general election. Fly won 60.40% of the votes in the general election, and Weekly received the remaining 39.6% of the votes. Fly became the elected sheriff of Tallahatchie County.

After the election, Sheriff Fly implemented an "objective system of hiring personnel" in which he terminated all employees, allowed them to re-apply, conducted interviews, and then made his employment determination. Ultimately, this process resulted in Fly re-hiring every employee except Weekly. At the same meeting where Sheriff Fly announced his new hiring system, he also made statements like "I [am] the only politician in the Sheriff's Office, I [am] the only elected official in the Sheriff's Office," that there is only room for one politician in the Sheriff's Department, and that he was going to look into a policy which would require Sheriff's Department personnel to resign if they wished to run for political office. [46, Exhibit 2 Sheriff Jimmy Fly Deposition 28:15-24].

Sheriff Fly posted the interview schedule for deputies on their routine work schedule, with the interviews taking place between November 23-25, 2019. The work schedule was posted both at the Sheriff's Office and at the Tallahatchie County Jail, where schedules were routinely and customarily posted.

During this time though, Weekly was assigned as a school resource officer ("SRO") for East Tallahatchie School District. As such, his schedule was assigned by the school, not the schedule posted in the Sheriff's office or jail. As a SRO, Weekly worked early in the morning until the school closed, with evening hours required for school events. Weekly did not report to the Sheriff's Office, and instead would call in to dispatch to "report for duty" and go directly to the school.

Weekly's re-hiring interview, as assigned on the Sheriff Deputy schedule, was on November 25, 2019 at 9:00am. Weekly has testified that he was unaware of his interview time, and was only notified the morning of November 25 when Dispatcher Louise Clark called him to

2

be at the Sheriff's Office at 9:00 with all of his county gear and anything else he was in possession of that was owned by the county. [See 44, Exhibit 6 Deposition of Rodzinski Weekly 26:17 – 27:22; See also 44, Exhibit 3 Deposition of Louise Clark 22:14-18]. Weekly arrived and turned in his gear, and between 9:15-9:20am he appeared in Sheriff Fly's office.

When Weekly arrived, Sheriff Fly handed him a termination letter, asked him to leave his equipment on the chairs in the waiting room and told him "Thank you." Sheriff Fly did not have any sort of conversation with Weekly at this time. He did not ask why Weekly was late, did not discuss Weekly's termination, and did not explain that his arrival time resulted in Fly not even considering Weekly for re-hire. Weekly had never had a negative performance review, and in fact, the School Superintendent who worked with Weekly as a school resource officer wanted to employ him even after Sheriff Fly failed to re-hire him.

Sheriff Fly did ultimately rehire the Dispatcher Louise Clark, who is Weekly's mother-in-law and a signer of Weekly's petition to qualify for the sheriff's election, as well as John Page and Maurice Brooks, the two deputies whom Fly defeated in the primary election. In fact, Sheriff Fly re-hired every deputy except for Weekly.

On May 22, 2020 Weekly filed a Complaint in this court alleging that his First Amendment Rights were violated under 42 U.S.C.A. §1983 when Sheriff Fly terminated or failed to re-hire him because Weekly ran against Fly in the primary election. Discovery has been completed, and on July 16, 2021 the Defendants filed their motion for summary judgment arguing that the sole reason that Weekly was not re-hired was because he was 15-20 minutes late for his interview, and that Weekly cannot prove a *prima facie* case of free speech retaliation under §1983.

3

**Discussion**

I. <u>**Standard for Summary Judgment**</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "A dispute is genuine if the summary judgment evidence would enable a reasonable jury to return a verdict for the non-movant." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019)(citing *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016)). Further, the Supreme Court has stated "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . ." *Id.* at 323.

"Once a summary judgment motion is made and properly supported, the nonmovant must go beyond pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 (5th Cir. 1996). "Specifically, a non-moving party cannot defeat summary judgment by relying only on its pleadings. *Id.* at 325.

"Summary judgment should be used most sparingly in . . . First Amendment cases . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities." *Haverda v. Hays County,* 723 F.3d 586, 592 (5th Cir. 2013)(quoting *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir. 1998)).

**II.     Free Speech Retaliation Standard Under 42 U.S.C.A. §1983**

For Weekly to recover for a free speech retaliation claim, he must satisfy the following four elements: "(1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions." *Cox v. Kaelin,* 577 Fed. Appx. 306, 310 (5th Cir. 2014)(citing *Finch v. Fort Bend Indep. School Dist.,* 333 F.3d 555, 563 (5th Cir. 2003)).

To grant summary judgment, the Court must find that there is no genuine issue of material fact as to any of the above listed elements, as such each element shall now be examined.

**A.     Adverse Employment Decision**

In *McBee v. Jim Hogg County*, 730 F.2d 1009 (5th Cir.1984) (en banc), the Fifth Circuit addressed a factual scenario identical in all material respects to the one at issue here and concluded that "the fact that the deputies were terminated by a 'failure to rehire' rather than a 'dismissal' is irrelevant to the question of whether they were impermissibly terminated for exercising their First Amendment rights." Id. at 1015.

As such, it is clear to this Court that Weekly, who was terminated and then not re-hired, suffered an adverse employment decision and the first element has been satisfied.

**B.     Matter of Public Concern**

The Defendants concede in their motion that the Fifth Circuit has routinely held that an individual's political candidacy is a matter of public concern, and as such, there is no need to examine this element in detail. Weekly's political candidacy when he ran for election for Sheriff

constitutes a matter of public concern and the second element has been satisfied.

### C. Public Concern Outweighs Defendant's Interest in Promoting Efficiency

Once a plaintiff survives the threshold of whether their actions or speech were a matter of public concern, the court must then "strike 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Click v. Copeland,* 970 F.2d 106, 111 (5th Cir. 1992)(citing *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

The defendants assert that because there was no policy restricting or limiting any employee of the Tallahatchie County Sheriff's Department from running for and seeking the office of Sheriff, there can be no nexus between his candidacy and failure to be re-hired. The defendants argue that as a result, the Plaintiff cannot establish this essential element of proof.

The defendants have missed the mark on their analysis of this prong of a retaliation claim. There is no requirement that a policy or restriction against running for office is in place to find that public concern outweighs a defendant's interest in promoting efficiency. In fact, it is a case-by-case balancing test where courts "more readily find that the government's interests outweigh the employee's interests where the employee is a policymaker or is confidential." *Wiggins v. Lowndes County, Miss.,* 363 F.3d 387, 390 (5th Cir. 2004)(citing *Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 994 (5th Cir. 1992)).

In Mississippi, deputies in a sheriff's department are not policy makers. See *Crawford v. Desoto County Sheriff's Department,* 419 F.Supp.3d 965 (N.D. Miss. 2020). Only the sheriff holds the distinction of policymaker. *Johnson v. Banks*, Civ. Action No. 4:16cv210, 2017 WL 9605028

at *3 (N.D. Miss. 2017). Weekly, as a sheriff deputy and school resource officer was not a policymaker.

An employee is confidential "if he or she stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, e.g., as a private secretary to a policy maker." *Wiggins,* 363 F.3d at 391 (quoting *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir. 1979). Here there are no assertions that anything about Weekly's position as a deputy sheriff and school resource officer gave him access to confidential documents, or other materials that would embody policymaking deliberations or determinations.

As such, Weekly's interest in commenting on matters of public concern, here done by running for Sheriff, outweighs the defendants' interest in promoting efficiency, and the third element has been satisfied.

### D. Plaintiff's Speech Motivated Defendant's Actions

The fourth prong requires the plaintiff to demonstrate that his protected First Amendment activity was a motivating factor for the adverse employment action. *Griggs v. Chickasaw Cnty.,* 930 F.3d 696, 703 (5th Cir. 2019). Further, direct evidence of a retaliatory motive is not necessary to prove this element of a *prima facie* case. *Shumpert v. Johnson,* 621 F.Supp.2d 387, 393 (N.D. Miss. 2009). However, "[o]nce a plaintiff has met his burden of showing that his protected speech was a substantial or motivating factor in the defendant's adverse employment decision, a defendant may still avoid liability by showing, by a preponderance of the evidence, that it would have taken the same adverse employment action even in the absence of the protected speech." *Haverda v. Hays County,* 723 F.3d 586, 591-92 (5th Cir. 2013)(citing *Mt. Heathly City Sch. Dist. Bd. Of Educ.*

7

*v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). An employee can then overcome that showing by presenting evidence that "his employer's ostensible explanation for the discharge is merely pretextual." *Haverda*, 723 F.3d at 592 (2013)(citing *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991)).

Further, "[a]s the trier of fact, the jury ha[s] the authority to assess the credibility of the witnesses; [they are] therefore free to discredit the Sheriff's stated motivation for firing the Plaintiff and infer a different one from his testimony as a whole and the other evidence presented at trial." *Shumpert,* 621 F.Supp.2d at 392 (2009); See also Brady v. Fort Bend County, 145 F.3d 691, 714 (5th Cir.1998).

So, the Court is left to determine whether a reasonable jury could listen to the testimony and evidence provided and find that Weekly's sheriff candidacy was a motivating factor in not re-hiring him; then and only then, the burden will shift to the defendants to show that it would have taken the same adverse employment action even in the absence of Weekly's candidacy.

The defendants argue that there is no evidence that Weekly's candidacy led to not re-hiring him, and in support, the defendants point out that Sheriff Fly re-hired the two deputies who ran against him in the democratic primary. [45, p. 10] So, the Court will first examine whether there is any evidence of Weekly's candidacy being a motivating factor in his termination.

Weekly points to statements made by Sheriff Fly to his deputies in a meeting shortly after the election. Sheriff Fly himself testified the following about these statements:

> Q: Okay. Have you ever told anyone in your department that you were the only politician in the Sheriff's Department?
> A: Yes, sir.
> Q: When did you say that?
> A: In a meeting we had.
> Q: Tell me about that. When was that?

8

A:     It was the meeting after the November election and I had gotten all the deputies together and I was letting them know, you know, that we were going to go through a rehiring process, that everyone was going to be terminated. If they wanted to reapply, they could reapply, and I would set up the time for an interview and we would interview them.

Q:     Okay. Do you recall what else you said about elections or politicians or running for political office during that meeting?

A:     I said that, you know, I – I was the only politician in the Sheriff's Office, I was the only elected official in the Sheriff's Office.

Q:     What did you mean by that?

A:     I mean, I am the only elected – you know, I was elected Sheriff.

Q:     Did you ever say that there was only room for one politician in the Sheriff's Department?

A:     Yes, sir.

Q:     Did you ever tell anyone in the Sheriff's Department that they would have to resign if they ever wanted to run for political office in the future?

A:     I told them that I was going to look at making a policy.

Q:     About what?

A:     About people running for political offices would have to resign during their campaign.

[44, Exhibit 1 Deposition of Sheriff Jimmy Fly 28:15 – 29:24 – 49:9]. The caselaw makes clear that it's the jury's task, as the trier of fact, to assess the credibility of witnesses, to weigh the evidence and to infer whatever meaning they find in testimony and evidence. Here, a reasonable jury *could* find that these statements made to the deputies indicated that Sheriff Fly had an ulterior motive in terminating Weekly – namely, eliminating a potential political opponent.

The burden then shifts to the defendants to show by a preponderance of the evidence that they would have taken the same adverse employment action even in the absence of Weekly's candidacy. For this, the defendants assert that it is "undisputed that Weekly was late for his interview." [45, p.12] The Court does not disagree that everyone is in agreement that Weekly was tardy to his scheduled interview time. Further, it is a reasonable assertion from the Sheriff to say that being late to an appointment might justify the decision not to hire a candidate. This means that the burden would again shift to the plaintiff to show that this given reason is pretextual.

9

By all accounts, Weekly was good at his job. The School Superintendent was even interested in retaining Weekly as the school resource officer after Sheriff Fly did not re-hire him. It was not job performance that motivated Sheriff Fly to terminate Weekly. As discussed above, it is "undisputed that Weekly was late for his interview." [45, p.12] However, the defendants fail to acknowledge and Weekly points out that there is significant conflicting testimony and evidence regarding whether Weekly actually even knew about his interview time before November 25.

Weekly testified that he did not know that the meeting on November 25 was an interview and that he did not see the schedule. His mother-in-law, Louise Clark, who was a Dispatcher with the Sheriff's Department testified that she called him on November 25 about the 9:00am meeting. And Sheriff Fly himself testified that Weekly had a separate schedule from the other deputies, that Weekly's name did not appear on the printed schedule, that he did not hand Weekly a copy of the schedule, that he did not tell him about the interview, and that he did not know whether anyone had communicated the interview time to Weekly prior to November 25. [44, Exhibit 1 Deposition of Sheriff Jimmy Fly 43:21 – 49:9].

Further, upon hearing that Sheriff Fly re-hired every other employee except Weekly could also be interpreted by a jury to be evidence that the interview reason was not the actual reason that Fly terminated Weekly.

Therefore, a reasonable jury could find that Sheriff Fly's given termination reason, tardiness to an interview, was merely a pretextual reason to hide the fact that he terminated Weekly because he ran against him in the general election for Sheriff.

In light of the competing testimony and evidence, the requirement that inferences must be drawn in the favor of the non-moving party, and that credibility determinations and weight of

10

evidence be reserved for the jury; the Court finds that there is a genuine issue of material fact which should be left for the jury on the fourth element of the claim. As such, summary judgment must be denied.

### III. Qualified Immunity

"Qualified immunity shields a governmental official from liability based on his performance of discretionary functions." *Haverda*, 723 F.3d at 598 (2013)(citing *Beltran v. City of El Paso,* 367 F.3d 299, 302-03 (5th Cir. 2004)). A two-step analysis must be undertaken by a court examining qualified immunity. First the Court must ask whether, when the facts are taken in the light most favorable to the plaintiff, the official's conduct violated a constitutional right; and second, whether that constitutional right was clearly established at the time of the conduct. *Haverda*, 723 F.3d at 598 (2013). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Fifth Circuit, in reversing the finding of qualified immunity in *Haverda,* a similar factual scenario, stated that sheriff deputies have a clearly established constitutional right not to be fired for engaging in protected speech. *Id.* For this reason alone, the immunity defense should fail.

In the same case*,* the court stated "[i]f resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability. . . , and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." Id. At 599. Here, the Court has already found that the questions of which termination

reason is most valid and which party is liable, is a question for the jury. Therefore, this case is not appropriate for summary judgment.

**IT IS HEREBY ORDERED** that [44] Defendants' motion for summary judgment is **DENIED.**

This the 27th day of September, 2021.

                                                                    **/s/** Michael P. Mills
                                                                    **UNITED STATES DISTRICT JUDGE**
                                                                    **NORTHERN DISTRICT OF MISSISSIPPI**